Filed 7/8/24  P. v. Rojas CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B324221 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA158438) |
| v. | |
| RANDALL LEE ROJAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Randall Lee Rojas was convicted of first degree murder in 1999. Rojas now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1] The trial court concluded Rojas did not make a prima facie showing of eligibility for resentencing because he was convicted as the actual killer. Rojas contends the trial court erred because he may have been able to present new evidence demonstrating that he was not the actual killer, or that he did not act with intent to kill. We affirm the order denying Rojas's petition for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The underlying offense*

We take our statement of the facts underlying Rojas's crime from the Court of Appeal opinion affirming the judgment of conviction. (*People v. Briant, et al.* (Sept. 26, 2001, B137306) [nonpub. opn.] (*Briant*).)[2]

---

[1] All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the law as section 1172.6 for the remainder of this opinion.

[2] We refer to the Court of Appeal opinion affirming the judgment of Rojas's conviction only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) We do not rely on the facts in *Briant* to review the trial court's determination of his eligibility for resentencing at the prima facie stage. (*Id.* at p. 988.)

Rojas and Ritch Briant "were members of a white-supremacist skinhead gang in Lancaster known as the Nazi Low Riders. Defendant Jessica Colwell was a Nazi Low Rider associate. Gangmembers [*sic*] hated black people and wanted to live in an all-white Lancaster and, ultimately, an all-white United States."

One evening in November 1995, Rojas, Briant, and another Nazi Low Rider associate, Michael Thornton, went to a McDonald's in Lancaster. They encountered a homeless white woman who told them Milton Walker, a homeless Black man, had kicked her in the back. "She indicated that the man who had assaulted her was in the vacant lot. Either Briant or Rojas said, 'Let's go get that nigger.'" One of them "was carrying a stick that looked like a three or four foot length of two-by-four."

Rojas and Thornton assaulted Walker. Thornton testified that Rojas hit Walker multiple times with the two-by-four and kicked him in the head, while Briant was " '[e]gging [Rojas] on with racial slurs . . . .'" At some point during the assault, Walker lost consciousness. Eventually, Rojas, Thornton, and Briant left the scene, leaving Walker "lying on his back with his arms spread out . . . ." Briant and Colwell told others that they had returned to the scene later the same night without Rojas and Thornton. Colwell told a witness they found Walker "lying on the ground and not moving." Briant beat Walker again with " 'a stick, a board,'" and Colwell "had 'poked [Walker] in the eyeball with a metal conduit thing or a pipe or something.'"

The paramedics who pronounced Walker dead found a wooden board and a metal pipe at the scene stained with his blood. The medical examiner who performed the autopsy "determined Walker had died from blunt force head trauma and

resulting brain injury." He suffered nine to 13 blows to the head, two or three of which were inflicted with the board, and the remainder caused by either the wooden board, the metal pipe, or a kick to the head. The medical examiner concluded that all of Walker's injuries contributed to his death. The deputy medical examiner, a neuropathologist, opined that Walker had died " 'very soon' " after sustaining head injuries, although the exact time of death could not be determined.

### The underlying proceedings

The People charged Rojas, Briant, and Colwell with Walker's murder. (§ 187, subd. (a).) The information further alleged Rojas and Briant personally used a deadly and dangerous weapon, specifically a "wood stick," to commit the offense (§ 12022, subd. (b)(1)); that all three defendants voluntarily acted in concert with others (§ 422.75, subd. (b)); and all three defendants intentionally killed Walker because of race (§ 190.2, subd. (a)(16)).

At the conclusion of the September 1999 trial, the trial court instructed the jury on murder and manslaughter. The trial court instructed that to convict Rojas of first degree murder, the jury had to find he killed Walker with express malice aforethought (CALJIC Nos. 8.10, 8.20). The trial court further instructed the jury with CALJIC No. 8.11, which stated: "malice is express when there is manifested an intention unlawfully to kill a human being." The court also instructed the jury that a person who "unlawfully inflicts a physical injury upon another person" causing their death is liable for homicide even if the injury was not the only cause of death (CALJIC No. 8.58). However, the court instructed the jury that if it believed an independent intervening action of some other person caused

4

Walker's death, or if it had a reasonable doubt that any of Rojas's acts caused Walker's death, it could not find Rojas guilty of unlawfully killing Walker.

Regarding the weapons use allegation, the court instructed the jury that it must find Rojas intentionally displayed a weapon "in a menacing manner," or intentionally struck or hit a human being with the weapon, to find that Rojas personally used a deadly or dangerous weapon in the commission of the offense (CALJIC No. 17.16). Finally, the court instructed the jury that to find true the special circumstance that Rojas intentionally killed Walker because of his race, the jury had to find that Rojas (1) was the actual killer or (2) that he aided and abetted first degree murder with the intent to kill (CALJIC No. 8.80.1). The trial court did not instruct the jury on accomplice liability, the felony murder rule, the natural and probable consequences doctrine, or any other theory allowing the jury to impute malice to Rojas solely based on his participation in Walker's murder.

The jury convicted Rojas of first degree murder. It further found true that he intentionally killed Walker because of race, he committed the offense voluntarily and in concert with others, and he personally used the " 'wood stick' " as a deadly and dangerous weapon in committing the murder. The trial court sentenced Rojas to life without the possibility of parole.

### Resentencing proceedings

In April 2022, Rojas filed a petition for resentencing under section 1172.6. He indicated that he had been prosecuted under a theory of imputed malice and could not presently be convicted of murder because of changes Senate Bill No. 1437 (2017–2018 Reg. Sess.) made to sections 188 and 189. The trial court appointed counsel and ordered the People to file a response. The

5

People opposed the petition on the ground that Rojas was prosecuted as a perpetrator acting with actual malice.

In August 2022, the trial court held a hearing on the petition under section 1172.6, subdivision (c). Both the People and defense counsel submitted without argument. The trial court found Rojas failed to make a prima facie case for eligibility because the record reflected the jury was not instructed on any theories of imputed malice and the jury's finding that Rojas personally used the weapon established he was convicted as the actual killer. The court denied the petition. Rojas timely appealed.

## DISCUSSION

### I. Senate Bill No. 1437 and Section 1172.6

In 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see also *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill No. 1437 created a procedure, now codified at section 1172.6, in which a person convicted of a qualifying offense

6

under the former law may seek resentencing if he or she could no longer be convicted of those offenses under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.)  A defendant commences the procedure by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law.  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  In relevant part, the statute requires the court, "[a]fter the parties have had an opportunity to submit briefings," to "hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause.  If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

## II.     Prima Facie Stage and Standard of Review

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Ibid*.)  Courts may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id*. at p. 972.)  Rather, "[t]he record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81

Cal.App.5th 45, 54–56 [considering jury instructions and verdicts to determine whether defendant made prima facie showing of eligibility]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 (*Ervin*) [considering sentencing enhancements, jury instructions, closing arguments, and verdicts at prima facie stage].)  The court may make credibility determinations adverse to a petitioner only if the record of conviction " ' "contain[s] facts refuting the allegations made in the petition" . . . .' " (*Lewis*, at p. 971.)

As relevant here, a petitioner fails to make a prima facie showing for relief "if the record of conviction conclusively establishes . . . that . . . the petitioner was the actual killer, or . . . the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (*Lopez*).)  The trial court's denial of a resentencing petition at the prima facie stage " 'is a purely legal conclusion,' " which appellate courts review de novo. (*Ervin, supra*, 72 Cal.App.5th at p. 101.)

## III. The Record of Conviction Conclusively Establishes Rojas is Ineligible for Relief

Rojas contends the trial court erred by finding his petition did not establish a prima facie case for resentencing eligibility. We disagree.

### A. The jury instructions and verdict show the jury found Rojas was the actual killer and acted with express malice

In Rojas's underlying trial, the court did not instruct the jury on the natural and probable consequences doctrine, felony murder, or any theory permitting the jury to impute malice to Rojas based solely on his participation in the crime.  The trial court also did not instruct the jury on aiding and abetting.  The

8

jury instructions did not leave open the possibility that the jury convicted Rojas on an invalid theory of liability.

Indeed, the jury's findings conclusively establish that it found Rojas was the actual killer.  The jury concluded that Rojas personally used a deadly and dangerous weapon in the commission of the first degree murder, establishing that it found Rojas personally killed Walker.  (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1202 (*Bodely*) [jury's finding that defendant personally used a weapon in committing murder established defendant personally killed the victim].)  The jury was also instructed that it could not find Walker was intentionally killed because of race unless it found Rojas was (1) the actual killer or (2) an aider and abettor who acted with the intent to kill. (CALJIC No. 8.80.1.)  The jury found this allegation true in the absence of any aiding and abetting instruction, indicating it found Rojas was the actual killer.

Thus, to reach its verdict, the jury had to find Rojas personally killed Walker.  (*Lopez*, *supra*, 78 Cal.App.5th at pp. 17–19 ["actual killer" for purposes of resentencing means someone who personally killed the victim].)  On this basis alone, he is ineligible for resentencing relief as a matter of law.  (*Id.* at p. 14; *People v. Mares* (2024) 99 Cal.App.5th 1158, 1166 [actual killer theories are still valid after Senate Bill No. 1437's amendments to the Penal Code], review granted May 1, 2024, S284232 (*Mares*); *People v. Garcia* (2022) 82 Cal.App.5th 956, 967 [Senate Bill No. 1437 imposed heightened mens rea requirement only for persons who were not actual killers].)

Further, the record of conviction also irrefutably demonstrates that the jury found Rojas acted with express malice.  The court instructed the jury that first degree murder

9

required a finding that Rojas acted with express malice, which the instructions defined as the intent to kill. The jury's first degree murder verdict therefore necessarily found Rojas personally harbored the intent to kill. Moreover, by finding true that Walker was killed because of his race, the jury necessarily found beyond a reasonable doubt that Rojas intended to kill. (*People v. Talamantez* (1985) 169 Cal.App.3d 443, 468 [instruction that required jury to find victim was intentionally killed because of his race required jury to find defendant intended to kill].)

Rojas does not dispute that the record of conviction excludes the possibility that the jury convicted him of first degree murder under a theory no longer viable under Senate Bill No. 1437's amendments to the Penal Code. Instead, he contends that at an evidentiary hearing, he may have been able to present new evidence that would show he was not the actual killer, or that he did not act with intent to kill.

These arguments fundamentally misunderstand the scope of section 1172.6.[3] Section 1172.6 does not afford a petitioner an opportunity to establish that, given the chance to present new evidence, the petitioner might be able to undermine the factual basis for a conviction that is otherwise legally valid under the amended law. Instead, the law is limited to providing relief only to those individuals who could no longer be convicted of murder because of the changes to the malice requirement reflected in amended sections 188 and 189. (*Mares*, *supra*, 99 Cal.App.5th at

---

[3] Because we address the merits of Rojas's argument, we need not resolve whether Rojas forfeited the issues on appeal by failing to raise them at the hearing on his petition, or whether this failure constituted ineffective assistance of counsel.

p. 1166, review granted [petitioner failed to show he could not be convicted today " 'because of' " changes to malice requirement in § 188 and § 189].)  Rojas has advanced no theory that would bring his contentions within the scope of section 1172.6.

Indeed, as our high court has explained, section 1172.6 "strongly suggests" the Legislature intended trial courts to consider "many, and perhaps most," prior jury findings on resentencing, whether adverse or favorable to a defendant. (*Strong, supra,* 13 Cal.5th at p. 715; cf. *People v. Curiel* (2023) 15 Cal.5th 433, 465 [a court giving effect to preclusive jury findings does not engage in factfinding].)  The statute does not reflect a legislative intent "to permit wholesale relitigation of findings supporting murder convictions" in resentencing proceedings. (*Strong,* at p. 715; *People v. Coley* (2022) 77 Cal.App.5th 539, 549 ["[A] section [1172.6] petition is not a means by which a [petitioner] can relitigate issues already decided"].)  The trial court therefore properly gave effect to the jury's findings that Rojas was the actual killer and acted with specific intent to kill to conclude he did not make a prima facie case for relief.

Rojas cites the *Lewis* decision's reliance on *People v. Drayton* (2020) 47 Cal.App.5th 965 (*Drayton*), a habeas case, to argue that the trial court should have evaluated his prima facie case "notwithstanding" factual issues resolved against him by the jury.  Rojas misinterprets the case law.  The *Lewis* court cited *Drayton* for the proposition that courts must take a petitioner's factual allegations as true at the prima facie stage.  But the *Lewis* court also adopted from *Drayton* the qualifier that when the record of conviction " ' "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "

11

(*Lewis*, *supra*, 11 Cal.5th at p. 971, citing *Drayton*, at p. 979.) *Lewis* therefore confirms that the trial court may find a petition's allegations not credible at the prima facie stage when facts conclusively established by the record of conviction contradict those allegations.

The jury's verdict conclusively established that the jury found Rojas was the actual killer and that he acted with the specific intent to kill. The trial court properly gave effect to these findings to conclude Rojas failed to establish prima facie eligibility for resentencing relief.

### C. Questions of causation did not establish a prima facie case

Rojas appears to argue that he made out a prima facie case because there was "a credible argument" that Briant and Colwell's conduct actually caused Walker's death. As explained above, the jury's verdict resolved this issue by finding he personally killed Walker. (*Bodely*, *supra*, 95 Cal.App.5th at p. 1202.)

Moreover, the jury also found Rojas acted with express malice. Causation theories are immaterial to questions of malice. (*People v. Carney* (2023) 14 Cal.5th 1130, 1145, 1147 [proximate cause "deals with the actus reus of a crime" and "does not implicate concerns regarding imputed mens rea and vicarious liability identified in . . . Senate Bill No. 1437"]; see *Bodely*, *supra*, 95 Cal.App.5th at p. 1204 [causation instruction was unrelated to theories of imputed malice].) Whether the jury found Rojas's conduct to be the exclusive, primary, or direct cause of Walker's death has no bearing on his eligibility for resentencing under the amended statutes.

## IV.  Rojas Has Not Established a Violation of His Constitutional Rights

Finally, Rojas argues that the trial court's denial of his petition at the prima facie stage violated his federal and state rights to equal protection and due process, and federal and state prohibitions against cruel and unusual punishment.  These arguments are unavailing.

A petitioner is entitled to an evidentiary hearing only if undisputed facts contained in the record of conviction do not demonstrate the petitioner's ineligibility for relief as a matter of law.  (§ 1172.6, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 971–972.)  We have concluded the record of conviction conclusively establishes Rojas is ineligible for resentencing under section 1172.6.  Therefore, he is not similarly situated to other petitioners who are entitled to an evidentiary hearing under the statute.  (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565 ["only those persons who are similarly situated are protected from invidiously disparate treatment" under equal protection clause].)  Rojas states no other basis for his argument that the denial of his petition violated his substantive due process rights or the prohibition against cruel and unusual punishment.

Additionally, Rojas's only procedural due process argument is that the trial court unlawfully deprived him of his liberty interest in resentencing relief by erroneously denying his petition before a hearing.  As explained above, we find no error in the trial court's conclusion that Rojas failed to make the requisite prima facie showing of eligibility for resentencing.  Rojas does not challenge the constitutionality of the procedures in section 1172.6 or state any other basis for his procedural due process claim.

13

## DISPOSITION

The trial court's order denying the petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL
REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.